UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| CHATEAUX SOFTWARE DEV., INC., | : |
| Plaintiff, | : Civil Action No. |
| - against - | : |
| | : October 5, 2017 |
| BOSTON CIO, LLC, | : |
| Defendant. | : |

---

## COMPLAINT

Plaintiff Chateaux Software Dev., Inc. hereby alleges the following cause of action against Defendant Boston CIO, LLC:

**FIRST COUNT** (Breach of May 5, 2016 Subcontractor Agreement)

1.  Plaintiff, Chateaux Software Dev., Inc. ("Chateaux"), is a Connecticut corporation with its principal place of business located at 50 Riverside Avenue, Westport, Connecticut.

2.  Boston CIO, LLC ("BostonCIO" or "Defendant") is a Massachusetts limited liability company with a place of business at 21 Boyden Road, Medfield, Massachusetts 02052.

3.  Chateaux provides a wide-range of computer technology services and products including cloud computing, cyber security, data management, design services, application integration and application development.

4.  On or about May 5, 2016, Chateaux and BostonCIO entered into a Subcontractor Agreement (the "Subcontractor Agreement") to perform certain work on behalf of BostonCIO pursuant to work orders entered between the parties.

5.  On or about May 6, 2016, Chateaux and BostonCIO entered into a work order under the Subcontractor Agreement (the "May 6, 2016 SOW", collectively with the Subcontractor Agreement the "Uber SOW") pursuant to which Chateaux agreed to develop an

Uber application, including Uber Code Management and MMTC Applications to manage and handle Uber Codes (the "Uber Services"), for BostonCIO's end-user clients, Maximus Real Estate Partners and Parkmerced Labs (collectively, "MRP").

6. Pursuant to the Uber SOW, Chateaux retained all rights, title and interest in any and all Chateaux intellectual property and products used or developed by it in connection with providing the Uber Services.

7. Pursuant to the Uber SOW, upon payment in full for all fees and related expenses due to Chateaux, BostonCIO would have a non-exclusive, world-wide and royalty free license to use the deliverables provided by Chateaux.

8. Pursuant to the Uber SOW, BostonCIO agreed to compensate Chateaux at a rate of $170.00 per hour for all work performed by Chateaux.

9. Chateaux provided all the Uber Services required by the Uber SOW.

10. Chateaux invoiced BostonCIO for work performed in connection with the May 6, 2016 SOW.

11. Notwithstanding, BostonCIO has failed and refused to pay Chateaux in full for the services Chateaux rendered in connection with the Uber SOW, and a balance of $71,980.00 remains due and owing to Chateaux in connection with the Uber SOW.

12. Chateaux has made demands upon BostonCIO to make full payment to Chateaux for the Uber Services in accordance with the Uber SOW.

13. Despite the fact that Chateaux performed all of its obligations pursuant to the Uber SOW, BostonCIO breached the Uber SOW by failing to pay Chateaux.

14. Moreover, even though BostonCIO failed to pay Chateaux in full for the deliverables associated with the May 6, 2016 SOW, BostonCIO provided MRP with access to the Uber SOW deliverables in further breach of the Uber SOW.

15. As a result of the foregoing conduct of BostonCIO, Chateaux has suffered and continues to suffer damages, lost interest and attorneys' fees and costs.

**SECOND COUNT** (Breach of Master Services Agreement)

1-4. Paragraphs 1-4 of the First Count are hereby made the allegations for paragraphs 1-4 of this Second Count.

5. On or about October 27, 2016, Chateaux and BostonCIO entered into a Master Services Agreement (the "MSA") pursuant to which Chateaux agreed to perform certain services for BostonCIO as outlined in such MSA and subsequent statements of work.

6. In connection with the MSA, on or about October 27, 2016, Chateaux and BostonCIO entered into a statement of work, as subsequently amended, for certain enhancements and fixes to the BostonComply web application (the "SOWs", collectively with the MSA, the "Agreement").

7. Pursuant to the MSA, Chateaux retained all rights, title and interest in its intellectual property (the "Chateaux IP"), and that, other that the Chateaux IP, the results of its services would become the property of BostonCIO upon its payment in full to Chateaux of any and all deliverables and services (the "Deliverables") provided by Chateaux.

8. Pursuant to the Agreement, BostonCIO agreed to compensate Chateaux at a rate of $150.00 per hour for all work performed by Chateaux.

9. Chateaux completed all work and provided to BostonCIO all Deliverables required by and set forth in the Agreement.

10. Moreover, BostonCIO accepted all Deliverables in accordance with the terms of the Agreement. Pursuant to Section 8.4 of the MSA, "BostonCIO shall have fifteen (15) days after completion, or such other period as may be mutually agreed upon (the "Acceptance Period"), to test the Deliverables. If BostonCIO does not notify Chateaux of any material Non-conformities within the Acceptance Period or if BostonCIO uses the Deliverables in a production environment or otherwise in connection with BostonCIO's conduct of its business, BostonCIO shall be deemed to have accepted the Deliverables."

11. Not only did BostonCIO fail to notify Chateaux of any material non-conformities of the Deliverables within fifteen (15) days after Chateaux's completion of its work, it also used the Deliverables in connection with the conduct of its business by, among other things, providing the Deliverables to third parties, modifying the Deliverables in preparation for client demonstrations, adding new data to the Deliverables in preparation for client demonstrations, demonstrating the Deliverables to existing and potential clients in an effort to gain additional consulting work, and using the Deliverables in a production environment.

12. Chateaux invoiced BostonCIO for work performed in connection with the Agreement.

13. Notwithstanding, BostonCIO has failed and refused to pay Chateaux in full for the services Chateaux rendered in connection with the Agreement, and a balance of $80,025.00 remains due and owing to Chateaux in connection with the Agreement.

14. Chateaux has made demands upon BostonCIO to make full payment to Chateaux for the provision of the Deliverables in accordance with the Agreement.

15. Despite the fact that Chateaux performed all of its obligations pursuant to the Agreement, BostonCIO breached the Agreement by failing to pay Chateaux.

16. Moreover, even though BostonCIO failed to pay Chateaux in full for the deliverables associated with the Agreement, BostonCIO has continued to use the Deliverables in further breach of the Agreement.

17. In an effort to avoid its obligations to pay Chateaux, BostonCIO sent notice to Chateaux purporting to terminate the BostonComply project. However, the purported termination notice was nothing more than a pretext and made in further breach of the MSA.

18. In particular, the alleged termination notice claimed that Chateaux breached the Agreement, yet the termination did not provide Chateaux with "30 days to either correct its breach or to initiate steps which the parties mutually agree will remedy the breach" as required by Section13.2 of the MSA.

19. On November 9, 2016, Chateaux and BostonCIO also entered into a Statement of Work (the "November 9, 2016 SOW") pursuant to which Chateaux developed certain applications for Boston Children's Hospital ("BCH").

20. Chateaux completed all work and provided to BostonCIO all deliverables required by the November 9, 2016 SOW.

21. BostonCIO accepted all deliverables in accordance with the terms of the November 9, 2016 SOW.

22. Chateaux invoiced BostonCIO for work performed in connection with the November 9, 2016 SOW.

23. Notwithstanding, BostonCIO has failed and refused to pay Chateaux in full for the services Chateaux rendered in connection with the November 9, 2016 SOW, and a balance of $4,080.00 remains due and owing to Chateaux in connection with the November 9, 2016 SOW.

24. Chateaux has made demands upon BostonCIO to make full payment to Chateaux for the provision of the deliverables in accordance with the November 9, 2016 SOW.

25. Despite the fact that Chateaux performed all of its obligations pursuant to the November 9, 2016 SOW, BostonCIO breached the Agreement by failing to pay Chateaux for services provided under the November 9, 2016 SOW.

26. Moreover, even though BostonCIO failed to pay Chateaux in full for the deliverables associated with the November 9, 2016 SOW, BostonCIO has continued to use the deliverables in further breach of the Agreement.

27. As a result of the foregoing conduct of BostonCIO, Chateaux has suffered and continues to suffer damages, lost interest and attorneys' fees and costs.

**THIRD COUNT** (Breach of the Covenant of Good Faith and Fair Dealing)

1-40. Paragraphs 1-14 of the First Count and Paragraphs 1-26 of the Second Count are hereby made the allegations for paragraphs 1-40 of this Third Count.

41. The Subcontractor Agreement, the May 6, 2016 SOW, the Agreement and the November 9, 2016 SOW contained an implied covenant of good faith and fair dealing, and Chateaux reasonably expected to receive compensation for the services it provided to Defendant.

42. Defendant has not dealt fairly with Chateaux and has breached the covenant of good faith and fair dealing by failing to compensate Chateaux for services rendered, and undertaking actions in an effort to evade its clear obligations under the Subcontractor Agreement, the May 6, 2016 SOW, the Agreement and the November 9, 2016 SOW to provide compensation to Chateaux for the services rendered.

43. Defendant's aforesaid conduct was done in bad faith, with a dishonest purpose and/or sinister motive in that Defendant entered into the Subcontractor Agreement, the May 6,

2016 SOW, the Agreement and the November 9, 2016 SOW, was well aware of its provisions, yet had no intention of abiding by its terms and compensating Chateaux in full for the services Chateaux provided to it and from which Defendant benefitted.

44. As a result of Defendant's conduct, Defendant's conduct has prevented Chateaux from receiving the benefits of its agreement with Defendant and Defendant has breached the covenant of good faith and fair dealing.

45. As a result of the foregoing conduct by Defendant, Chateaux has suffered and continues to suffer damages.

**FOURTH COUNT** (Unjust Enrichment)

1-3. Paragraphs 1-3 of the First Count are hereby made the allegations for paragraphs 1-3 of this Fourth Count.

4. At the request of BostonCIO, Chateaux developed an Uber application, including Uber Code Management and MMTC Applications to manage and handle Uber Codes for BostonCIO's end-user clients, MRP.

5. At the request of BostonCIO, Chateaux developed various enhancements and fixes to the BostonComply web application.

6. At the request of BostonCIO, Chateaux developed various applications for BCH.

7. At all times relevant to this complaint, BostonCIO utilized and/or benefited from the services provided by Chateaux.

8. Chateaux conferred substantial and valuable benefits on BostonCIO including, but not limited to developing various enhancements and fixes to the BostonComply web application, developing the Uber application, and applications for BCH

9. BostonCIO appreciated and knew of its receipt and benefit of the services rendered by Chateaux.  Moreover, BostonCIO received compensation from its clients for the work provided by Chateaux, but failed to compensate Chateaux for the services Chateaux provided it.

10. BostonCIO accepted the services and enjoyed the benefit of the services provided under circumstances in which it reasonably knew that Chateaux, in performing such services, expected to be paid by BostonCIO for such services.

11. Despite repeated demands, BostonCIO has failed, neglected, and refused to pay amounts due and owing to Chateaux for the benefits it received.

12. The conduct of BostonCIO in failing to compensate Chateaux for the benefits it received from Chateaux constitutes unjust enrichment to BostonCIO to the detriment of Chateaux.

13. As a result of the foregoing conduct of BostonCIO in failing to compensate Chateaux for the benefits it received, Chateaux has suffered and continues to suffer damages.

**FIFTH COUNT** **(Copyright Infringement)**

1-40. Paragraphs 1-40 of the Third Count are hereby made the allegations for paragraphs 1-40 of this Fifth Count.

41. At significant expense, Chateaux developed program libraries, user interface designs, coding, and various applications (collectively, the "Software").

42. The Software contains material wholly original and constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act").

43. Chateaux is, and at all relevant times has been the copyright holder of the Software under the Copyright Act.

44. BostonCIO has placed the Software into production and its clients MRP, BostonComply and BCH, are currently using the Software without having rights to do so.

45. BostonCIO's distribution and use of the Software without approval or authorization of Chateaux infringes Chateaux's copyrights in the Software pursuant to 17 U.S.C. 501.

46. Chateaux is entitled to recover from BostonCIO the amount of actual damages incurred as a result of the infringement, in such amount as is shown by appropriate evidence at trial.

47. As a result of such infringement, Chateaux is also entitled to injunctive relief pursuant to 17 U.S.C. § 502 and an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503.

48. Chateaux is also entitled to recover its attorneys' fees and costs of this action pursuant to 17 U.SC. § 505.

**SIXTH COUNT (Violation of Connecticut Unfair Trade Practices Act)**

1-58. Paragraphs 1-43 of the Third Count, paragraphs 4-13 of the Fourth Count and paragraphs 41-45 of the Fifth Count are hereby made paragraphs 1-58 of this Sixth Count.

59. At all relevant times, BostonCIO was a person within the meaning of Conn. Gen. Stat. § 42-110a(3).

60. At all relevant times, BostonCIO engaged in trade or commerce within the State of Connecticut.

61. BostonCIO has consistently and repeatedly breached the various agreements entered into with Chateaux including the Subcontractor Agreement, the May 6, 2016 SOW, the Agreement and the November 9, 2016 SOW by its refusal to pay invoices issued by Chateaux.

62. BostonCIO has also infringed Chateaux's copyrights in violation of the Copyright Act in blatant disregard for Chateaux's rights.

63. BostonCIO's aforesaid acts violate the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA"), in that its conduct was unfair, immoral, oppressive, unethical, unscrupulous and/or deceptive and has caused substantial injury to Chateaux.

64. As a direct and proximate result of Defendant's violation of CUTPA, Chateaux has suffered an ascertainable loss of money and property, and BostonCIO is liable to Chateaux for actual damages, punitive damages, attorneys' fees and costs.

65. Pursuant to Conn. Gen. Stat. § 42-110g(c), a copy of this complaint has been mailed to the Attorney General of the State of Connecticut and the Connecticut Commissioner of Consumer Protection.

## PRAYER FOR RELIEF

WHEREFORE, Chateaux Software Development, Inc. seeks the following relief:

1. Compensatory damages;

2. Attorneys' fees and costs pursuant to the MSA;

3. Injunctive relief against Defendant and all others in active concert or participation with Defendant enjoining them from infringing on Chateaux's Software;

4. Disgorgement to Chateaux of all profits derived from Defendant's unlawful acts.

5. Punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a);

6. Attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g(d);

7. Pre and post-judgment interest;

8. Such other and further legal and equitable relief as the Court deems necessary and proper.

PLAINTIFF,
CHATEAUX SOFTWARE DEVELOPMENT, INC.


By /s/ Jonathan M. Shapiro
    Jonathan M. Shapiro (ct24075)
    Shapiro Law Offices, LLC
    32 Washington Street
    Middletown, Connecticut 06457
    Telephone: (860) 347-3325
    Facsimile:  (860) 347-3874
    Email: jshapiro@shapirolawofficesct.com